BOLIN, Judge.
While shopping for groceries in the Cotton Boll Market plaintiff tripped over a display rack and fell to the floor. She sued Cotton Boll and its insurer for damages resulting from this accident. The lower court found plaintiff and Cotton Boll negligent, rejected plaintiff’s demands because of her contributory negligence, and on appeal this court affirmed the trial court judgment. 276 So.2d 380. Plaintiff applied for arid was granted writs by the Louisiana Supreme Court. 279 So.2d 202. The Supreme Court reversed the holding of this court and remanded the case to us “for the assessment of damages”. 289 So. 2d 85.
By stipulation all hospital and medical reports were admitted into evidence in lieu of sworn testimony. These medical reports and records reflect that soon after the accident on October 10, 1971, plaintiff was taken to the emergency room of the Schumpert Memorial Hospital in Shreveport at 3:30 p. m., and released the same day. She was diagnosed as having a superficial laceration of the upper lip and a small abrasion of the right leg. There was no necessity of suturing any wounds and she was released after being administered a tetanus shot.
The next day, October 11, 1971, plaintiff was seen and examined by Dr. Don H. Burt, an orthopedist, who reported he found “soreness in the cervical as well as the lumbar musculature but without neurological abnormality in the extremities. In addition there was contusion and swelling about the left knee with tenderness over the patella and the medial cartilage with no instability of the knee.” His initial diagnosis was: “Myoligamentous strain of cervical and lumbar areas as well as contusion facial area, upper lip and both knees.” Dr. Burt prescribed muscle relaxers and pain medication and advised her to check with him again in one week.
On October 18, plaintiff returned to Dr. Burt and he found: “Patient is still complaining of a lot of generalized soreness. There is tenderness in the neck and low back. No neurological changes are noted today. She is sent to PT for heat and ultrasound. In addition, she is started on Librium.”
On November 11, plaintiff returned to Dr. Burt complaining -of occasional soreness in the neck, back and legs. His neurological examination was negative but he advised her to continue physical therapy treatments and the previously prescribed medication and to return only if the symptoms persisted.
On December 17, 1971, plaintiff returned to Dr. Burt, still complaining of soreness in her neck, shoulders, back and legs. In his examination the doctor found no muscle spasm, that plaintiff had a full range of motion of her neck and back, and his final diagnosis was : “Myoligamentous strain cervical and lumbar area. No treatment is needed except for an occasional muscle re-laxen There is no evidence of permanent disability and she can do full time work activity.”
In addition to Dr. Burt, plaintiff consulted Dr. Robert P. Bays, who examined her on December 2, 15, and 20, 1971. He was under the initial impression that her thyroid glands were not functioning normally; he also noted she had a history of rectal bleeding and ordered a complete clinical examination including X-rays, thyroid, proctoscopic, eye and serology examinations. On the second and third examinations he found all of the studies were normal, including the thyroid studies, and concluded, “apparently she is not hypothyroid in spite of my original clinical impression.” He was unable to find any clinical reasons for plaintiff’s complaints, but asked her to *369 report back to him in a month if she was not doing well.
On December 21, 1971, plaintiff consulted Dr. W. W. Fox, an orthopedic surgeon, who reported she was referred to him by Dr. Bays. In his written report he concluded: “I can’t really find anything of objective consequence on this lady. I would be reluctant to undertake any treatment except for anxiety. I think if she would go back to work, it would probably be the best thing for her.”
On November 16, 1971, plaintiff was seen by Dr. Allen J. Tomlin, an oral surgeon of Shreveport. His written report, addressed to plaintiffs attorney, reflects that Mrs. Paxton was sent to him to evaluate any possible damage to her teeth resulting from the laceration on her lip. He found no damage to the teeth but concluded by recommending that in her spare time she massage the fibrous scar tissue of her lip to soften it.
On January 25, 1972, Mrs. Paxton was examined by Dr. Simeon H. Wall, a plastic surgeon, whose report, addressed to plaintiff’s attorney, states Mrs. Paxton had a 1.5 c. m. vertical scar on the upper lip. He recommended she return in two to four months before considering any “scar revision to the upper lip.” The record does not reflect she ever returned to Dr. Wall or that the scar worsened or became more apparent.
Despite plaintiff’s testimony that she continued to suffer pain up to the date of trial, the record does not support a finding she received serious or permanent injuries resulting from the fall. To the contrary, both Dr. Burt’s original and final diagnosis was “a myoligamentous strain of the cervical and lumbar area” and he concluded on December 17, 1971, that she had no permanent disability and could return to full time activities. Dr. Fox, the other orthopedist, could find nothing wrong with plaintiff. She suffered only minor bruises and abrasions to her right leg and a small laceration to her right lip. For these injuries, including minimal disfigurement to her lip, we find an award of $2500 to be adequate.
Plaintiff sues for loss of wages. At the time of the accident she was working through Prudhomme Registry which called her when the need arose for a practical nurse. Her rate of pay was $13.20 per day. According to her testimony she was unable to work for 60 days because of the accident, for which we find she is entitled to the sum of $792 for loss of wages.
It is difficult to determine from examining the medical and drug bills the items that are related to the accident. After a careful examination we find plaintiff is entitled to be reimbursed for the following:
The Bone and Joint Clinic, for services rendered by Dr. Burt ■ $ 208.00
Dr. W. W. Fox 95.00
Schumpert Memorial Hospital 24.00
Prescription drugs 44.30
We do not find plaintiff is entitled to recover for the costs incurred in the treatment or examination by the other physicians because the examinations were made either for the purpose of preparing for this litigation or for physical conditions in no way related to this accident.
For the reasons assigned it is ordered there be judgment in favor of Nora Burns Paxton against Ben Ballard d/b/a Cotton Boll Market, and Rockwood Insurance Company, in solido, in the sum of $3,663.-30, together with legal interest from judicial demand until paid, and all costs of these proceedings.